# LMS SHIPMANAGEMENT, INC.

P.O. BOX 58409  NEW ORLEANS, LA 70153

## PERSONAL INJURY/ILLNESS REPORT

INJURY ☒    ILLNESS ☐

| VESSEL M.V. ATLANTIC FOREST | VOYAGE #018 | DATE OF REPORT 28 NOV 2006 |
|---|---|---|

### INJURED/ILL

| FULL NAME ARNOLD JACKSON | DATE OF BIRTH 07 OCTOBER 1956 | MARRIED YES ☒ NO ☐ |
|---|---|---|

RATING A.B. MAINTENANCE    "Z" NUMBER    SOCIAL SECURITY NO. 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

HOME ADDRESS 3349 BRETAGNE CT., MARRERO, LA. 70072    TELEPHONE 504-341-2104

NEXT OF KIN-NAME DEBORAH JACKSON    RELATIONSHIP WIFE

ADDRESS Same As Above    TELEPHONE Same As Above

### EMPLOYMENT DATA

DATE JOINED SHIP 09 SEPT 2006    WHERE NEW ORLEANS    DATE LEFT SHIP

DATE SIGNED PRESENT ARTICLES 09 SEPT 2006    FOREIGN ☐  COASTWISE ☐    EXAMINED BY Concentra Medical - Nola

WHERE EXAMINED New Orleans, LA.    DATE EXAMINED 12 SEPT 2006    MONTHLY WAGES 2,219.99/MTH

DATE PAID OFF 03 DEC 2006    PORT SHUAIBA, KUWAIT    BEFORE WHOM MASTER: D.K. O'LAUGHLIN

WAGES PAID $ 8,071.44    DISPOSITION OF PERSONAL EFFECTS TAKEN ASHORE WITH CREW MEMBER

EXPECTED DATE TERMINATION OF ARTICLES 07 JAN 2007    PORT BEAUMONT, TEXAS

PREVIOUS EMPLOYER WATERMAN "SS" SGT. MATEJ KOCAK

### THE INJURY/ILLNESS & TREATMENT

DATE SUSTAINED/CONTRACTED 24 NOV 06    HOUR APPROX 0900    LOCATION ON SHIP    LOCATION OF SHIP AT SEA    PORT

BETWEEN PORTS BAHRAIN    AND SHUAIBA, KUWAIT    DATE/TIME REPORTED 27 NOV 2006 @ 1200HRS

TO WHOM REPORTED CH. MATE    IF INJURY, LOCATION OF INJURY ON PERSON LEFT SHOULDER, NECK AREA, LEFT ARM.

PHYSICAL SIGNS AND SYMPTOMS PAIN IN AREA OF LEFT SHOULDER, NECK AREA

DIAGNOSIS POSSIBLE MUSCLE PULL    DIAGNOSIS MADE BY CHIEF MATE.

BY WHOM TREATED ON BOARD SENT TO DOCTOR IN SHUAIBA IMMEDIATELY    NATURE OF TREATMENT N/A

NAME/ADDRESS OF ANY DOCTORS/HOSPITALS PROVIDING TREATMENT SEE REQUEST FOR MEDICAL ATTENTION SLIP.

AT WHOSE REQUEST HOSPITALIZED N/A

PREVIOUS SIMILAR INJURY/ILLNESS N/A

WHEN N/A    WHERE N/A    BY WHOM TREATED N/A

ANY MISCONDUCT INVOLVED YES ☐    IF YES, EXPLAIN IN REMARKS NO ☒    DATE RETURNED TO DUTY

### STATEMENT OF INJURED/ILL PERSON

ON DECK PORT SIDE PULLING LINE WITH THE BOSN C/O AB'S K.PARSONS AL POLK AND FELT A STINGING BURNING PAIN DOWN MY NECK SHOULDER AND ARM AND REPORTED TO CHIEFMATE.

PATIENT'S SIGNATURE Arnold Jackson

### REMARKS

NOTE. AT THE TIME OF THIS ALLEGED INCIDENT - NO ALLEGED INJURY WAS REPORTED. THIS ALLEGED INJURY WAS NOT REPORTED UNTIL 27 NOV 2006 (3 DAYS LATER).

### WITNESSES TO ONSET OF INJURY/ILLNESS AND TREATMENT

| NAME | HOME ADDRESS/TELEPHONE NUMBER | "Z" NUMBERS |
|---|---|---|
| NONE | | |

REPORT PREPARED BY (PRINTED & SIGNED) Peter D. Pizzarelli Jr %    DEPARTMENT HEAD (PRINTED & SIGNED) Peter D. Pizzarelli Jr %

USE ADDITIONAL SHEETS IF NECESSARY

EXHIBIT

**A**

JAN-09-2007  23:23          NEUROSURGICAL CONSULTANTS               504 885 2465       P.01/01

**Lucien S. Miranne, M.D.**
Neurosurgical Consultants, LLC
4228 Houma Blvd., Suite 510
Metairie, LA 70006

PATIENT:

Arnold Jackson

Medical Records #:  11318-7

**CHART NOTE**                                                    Page: 1

**12/27/06 - Office Visit**

**HISTORY:** Mr. Jackson is a 50-year-old with a history of left-sided neck pain and left radiating arm pain associated with numbness and tingling down the arms into the fingers of his left hand. No definite weakness. He denies any lower extremity or bowel or bladder problems. He was injured while working on a ship while he was pulling a line on 11/24/06 that was in Kuwait. He was initially treated there with medications. He notes the pain is worse with activities. It does subside somewhat when he lies down. He was also treated locally by Dr. Gordon Nutik. No prior such history. Dr. Nutik gave him an antiinflammatory, Naprosyn, and a muscle relaxer. He is a recovering addict, and he does not want narcotics.

**PAST MEDICAL HISTORY:** Apparent mild hypertension, which he does not take anything routinely for.

**MEDICATIONS:** None.

**ALLERGIES:** None known.

**SURGICAL HISTORY:** Negative.

**REVIEW OF SYSTEMS:** As above. He is right-handed.

**SOCIAL HISTORY:** He denies ethanol or tobacco abuse. He is a seaman. He is married. He lists no children.

**FAMILY HISTORY:** Noncontributory.

**PHYSICAL EXAMINATION:** On examination, he is 5'11" and weight is 220 lbs. His HEENT examination is unremarkable. She is normocephalic. Cervical spine had diminished range of motion in extension, mild diffuse cervicolumbar tenderness in the mid cervical spine. Negative spasm. He had a positive Spurling's on left lateral rotation. Extremities revealed no focal wasting, cyanosis, or edema. There were no masses in his neck or supraclavicular fossa. There was no significant shoulder pain on range of motion of his shoulders. His motor strength was normal 5/5 throughout his extremities, upper and lower. Sensation revealed nondermatomal changes to light touch in his left upper extremity. Cranial nerves were intact. Extraocular movements were full. Face symmetric. Tongue and palate midline. Shoulder shrug normal. Cerebellar and gait normal. Negative Romberg. Negative dysmetria. Deep tendon reflexes were 2+ biceps and symmetric, 1+ right triceps, absent left triceps, 2+ knees and symmetric, 1+ ankles, plus or minus upgoing toe on the left, negative right. No ankle clonus noted.

**IMAGING STUDIES:** I reviewed a cervical MRI scan from 12/08/06. I also reviewed Dr. Nutik's notes. The MRI scan is consistent with multilevel cervical spondylitic changes with a disc spur complex at C4-5 with moderate stenosis, more prominent to the right of midline. At C5-6, he has moderately severe central stenosis with bilateral neuroforaminal encroachment, lesser degenerative narrowing at C6-7, and there does appear to be a possible disc protrusion, more prominent on left side at C7-T1.

**IMPRESSION:** Cervical radiculopathy, unclear of the level at this point.

**RECOMMENDATIONS:** My recommendations are to obtain a cervical myelo-CT and EMG. I discussed those procedures with the patient, also risk of headache with nausea and vomiting regarding the myelogram. I gave him a prescription for the Medrol Dosepak and told him to hold his Naprosyn until that is complete.

I also gave him a prescription LYRICA. We will see him back following his studies as above to discuss further treatment options for him.

Lucien Miranne, Jr. M.D.

EXHIBIT

**B**

TOTAL P.01



P.O. Box 0991
Madisonville, La. 70447
Tel: (985) 845-4548
Fax: (985) 845-9913
E-mail: paul@jaquillard.com

January 10, 2007


Jenny Domiano
LMS Shipmanagement, Inc.
P.O. Box 58409
New Orleans, LA  70153


**RE:**    **Claimant:** Arnold Jackson
       **Claim #:** 202267
       **DOI:** 11/24/06
       **Employer:** LMS Shipmanagement

       **Diagnosis:** Strain to left shoulder


## PROGRESS REPORT # 1


## CURRENT MEDICAL STATUS

- MRI of the C spine done on 12/8/06 as ordered by Dr. Gordon Nutik, Orthopedist with following impression:

  - Significant central canal stenosis at multiple levels, most pronounced at C5-6 and there is mild cord contact and deformity at several levels.

  - Multiple areas of potentially significant degenerative foraminal encroachment, especially on the right side at C5-6 and C6-7.  Clinical correlation suggested

# DRS. NUTIK & STEINER
## A PROFESSIONAL MEDICAL CORPORATION
## ORTHOPAEDIC SURGERY

GORDON P. NUTIK, M.D.                              ROBERT A. STEINER, M.D.

4224 HOUMA BLVD., SUITE 270
METAIRIE, LOUISIANA  70006

Phone: 504-456-8013
Fax: 504-456-8183

December 13, 2006

LMS Ship Mgmt.
ATTN: Jenny Domiano
650 Poydras St.
Suite 1700
New Orleans, LA 70130

Re: Arnold Jackson
Chart No.  57424
D/A: 12/6/06

Dear Ms. Domiano:

I re-examined Arnold Jackson on 12/3/06.  He was still complaining of a lot of neck and left upper extremity pain.  He is no better.  The pain has continued moving down the left arm.  He complained of numbness in his whole left arm.  He had spoken to his sponsor concerning his drug addiction as he has not been able to sleep and the sponsor states that he can get narcotic medication.

PHYSICAL EXAMINATION:

Physical exam reveals pain to palpation about the left trapezius muscle about the neck.  The neck motion was not tested.  He has spasm of the neck muscles.

Neurologic exam reveals 2+ reflexes except for the left triceps which is 1+.  There is decreased sensation to light touch about the left hand.  There is decreased power in general on muscle testing about the left upper extremity.  There is 1/2" atrophy of the left forearm.

X-RAY EXAMINATION:

I have reviewed the MRI that was done on 12/8/06 of DIS of the cervical spine.  There are hypertrophic changes posteriorly at C4-5, C5-6, C6-7 and C7-T1.  There was a suggestion of an extruded fragment posteriorly and some cord compression on the

Re: Arnold Jackson
Page 2

sagittal views at C6-7 or C7-T1. On the axial views C2-3 is within normal limits. C3-4 reveals central bulge of the disc. C4-5 reveals osteophytes posteriorly, right greater than the left. C5-6 reveals question of soft tissue on the left which may appear like a disc herniation. C6-7 shows soft tissue consistent with disc herniation on the left best seen on sagittal views 23, 24 and 25. There is narrowing of the foramen. C7-T1 reveals significant posterior osteophytes to the right and left margins of the disc compressing the cord.

I have discussed the MRI findings with the radiologist, Dr. Zimmer, and he does agree that there is evidence for left-sided disc herniation at C6-7 and possibly at C5-6. He will be preparing an additional report concerning these findings.

It is my opinion that Mr. Jackson does have multi-level changes about the cervical spine and I feel that there is evidence for acute disc herniation, at least at the C6-7 superimposed on these underlying degenerative changes. Because of the continuing left upper extremity referred complaints, which I feel are secondary to nerve root compression, I have recommended that he see a neurosurgeon.

He was given a prescription for Vicdoin 7.5 mg. to be taken every four to six hours as needed for pain. He is off of work. He is discharged from my care with the anticipation that he will be seeing the neurosurgeon.

Yours very truly,

Gordon P. Nutik, M.D.

GPN/ml

cc:   Shannon Marrett

**Lucien S. Miranne, M.D.**

Neurosurgical Consultants, LLC
4228 Houma Blvd., Suite 510
Metairie, LA 70006

PATIENT:

Arnold Jackson

Medical Records #:  11318-7

**CHART NOTE**

Page:  1

**12/27/06 - Office Visit**

**HISTORY**:  Mr. Jackson is a 50-year-old with a history of left-sided neck pain and left radiating arm pain associated with numbness and tingling down the arms into the fingers of his left hand. No definite weakness. He denies any lower extremity or bowel or bladder problems. He was injured while working on a ship while he was pulling a line on 11/24/06 that was in Kuwait. He was initially treated there with medications. He notes the pain is worse with activities. It does subside somewhat when he lies down. He was also treated locally by Dr. Gordon Nutik. No prior such history. Dr. Nutik gave him an antiinflammatory, Naprosyn, and a muscle relaxer. He is a recovering addict, and he does not want narcotics.

**PAST MEDICAL HISTORY**:  Apparent mild hypertension, which he does not take anything routinely for.

**MEDICATIONS**:  None.

**ALLERGIES**:  None known.

**SURGICAL HISTORY**:  Negative.

**REVIEW OF SYSTEMS**:  As above. He is right-handed.

**SOCIAL HISTORY**:  He denies ethanol or tobacco abuse. He is a seaman. He is married. He lists no children.

**FAMILY HISTORY**:  Noncontributory.

**PHYSICAL EXAMINATION**:  On examination, he is 5'11" and weight is 220 lbs. His HEENT examination is unremarkable. She is normocephalic. Cervical spine had diminished range of motion in extension, mild diffuse cervicolumbar tenderness in the mid cervical spine. Negative spasm. He had a positive Spurling's on left lateral rotation. Extremities revealed no focal wasting, cyanosis, or edema. There were no masses in his neck or supraclavicular fossa. There was no significant shoulder pain on range of motion of his shoulders. His motor strength was normal 5/5 throughout his extremities, upper and lower. Sensation revealed nondermatomal changes to light touch in his left upper extremity. Cranial nerves were intact. Extraocular movements were full. Face symmetric.  Tongue and palate midline. Shoulder shrug normal. Cerebellar and gait normal. Negative Romberg. Negative dysmetria. Deep tendon reflexes were 2+ biceps and symmetric, 1+ right triceps, absent left triceps, 2+ knees and symmetric, 1+ ankles, plus or minus upgoing toe on the left, negative right. No ankle clonus noted.

**IMAGING STUDIES**:  I reviewed a cervical MRI scan from 12/08/06. I also reviewed Dr. Nutik's notes. The MRI scan is consistent with multilevel cervical spondylitic changes with a disc spur complex at C4-5 with moderate stenosis, more prominent to the right of midline. At C5-6, he has moderately severe central stenosis with bilateral neuroforaminal encroachment, lesser degenerative narrowing at C6-7, and there does appear to be a possible disc protrusion, more prominent on left side at C7-T1.

**IMPRESSION**:  Cervical radiculopathy, unclear of the level at this point.

**RECOMMENDATIONS**:  My recommendations are to obtain a cervical myelo-CT and EMG. I discussed those procedures with the patient, also risk of headache with nausea and vomiting regarding the myelogram. I gave him a prescription for the Medrol Dosepak and told him to hold his Naprosyn until that is complete.

I also gave him a prescription LYRICA. We will see him back following his studies as above to discuss further treatment options for him.

**Lucien Miranne, Jr. M.D.**

**Lucien S. Miranne, M.D.**

Neurosurgical Consultants, LLC
4228 Houma Blvd., Suite 510
Metairie, LA 70006

**CHART NOTE**

12/27/06 - **Office Visit**

PATIENT:

Arnold Jackson

Medical Records #:   11318-7

Page: 2

**cc:**
LMS

Gordon P. Nutik, M.D.



# Diagnostic
# Imaging Services
Specialists in Outpatient Radiology

Tenet HealthSystem

Accredited by the American College of Radiology
X-ray ● Fluoroscopy ● DEXA ● CT● Mammography ● MRI ● Nuclear Medicine
Nuclear Cardiology ● Ultrasound ● Vascular Ultrasound (Color Doppler)

www.DIS-Tenet.com

| | |
|---|---|
| **Patient Name:** | **JACKSON, ARNOLD** |
| **Ref. Physician:** | **Nutik, Gordon** |
| Account #: | 2064225 |
| Date of Birth: | 10/07/1956 |
| Patient ID: | 397341 |
| Date of Service: | 12/08/2006 |
| Page: | 1 of 2 |

NONCONTRAST MRI OF THE CERVICAL SPINE, 1430 HOURS

CLINICAL HISTORY:  Left upper extremity weakness, numbness and pain and left neck pain.

FINDINGS:  Noncontrast MRI of the cervical spine was performed routinely without prior studies for comparison or correlation.

Images demonstrate normal alignment.  There are vertebral body hemangiomas present at C4 and T2. No other significant marrow signal changes are detected.  There are some degenerative-type signal changes suggested involving C2 and C3.

No focal cord signal abnormality is detected.

There is multilevel degenerative disc disease and there is also evidence of some uncinate hypertrophy and facet degeneration.  No significant paraspinal soft tissue or other visualized soft tissue abnormality is appreciated outside the spinal column.

There is no significant finding at C2-3.  at C3-4, there is moderate central canal stenosis with slight cord flattening.  There is bilateral moderate degenerative foraminal encroachment.

At C4-5, there is moderate to severe central canal stenosis asymmetrically prominent to the right side with slight cord contact and flattening.  There is moderate to severe degenerative foraminal encroachment on the right and, to a lesser extent, the left.

At C5-6, there is severe central canal stenosis with mild cord contact and flattening.  There is severe degenerative foraminal encroachment bilaterally, more pronounced on the right and similar but more extensive than the above level.

At C6-7, there is moderate central canal stenosis without cord contact or flattening.  There is bilateral moderate degenerative foraminal encroachment.

At C7-T1, there are posterior disc protrusions in the right and left lateral recesses and there is moderate central canal stenosis.  There is minimal cord contact and deformity suggested anterolaterally and to the

| Metairie | Uptown | Marrero | Women's Center | Open MRI |
|---|---|---|---|---|
| 3625 Houma Boulevard | 3437 Prytania St. | 925 Avenue C | 4241 Veterans Blvd., Suite 100 | 4241 Veterans Blvd., Suite 10 |
| Metairie LA  70006 | New Orleans LA  70115 | Marrero LA  70072 | Metairie LA  70006 | Metairie LA  70006 |
| Tel 504.888.7921 | Tel 504.883.5353 | Tel 504.459.3200 | Tel 504.459.3222 | Tel 504.459.3255 |

12/12/06 03:01 PM EST : 9 Call Medical, Inc 100% Q: ity    Page 3 of 3 #604223 BE
Source Medical    205-968-6163    Page 3 of 3    Tue Dec 12 2006 13:05:41 CST



**Diagnostic**
**Imaging Services**
Specialists in Outpatient Radiology

Tenet Health System

Accredited by the American College of Radiology
X-ray • Fluoroscopy • DEXA • CT• Mammography • MRI • Nuclear Medicine
Nuclear Cardiology • Ultrasound • Vascular Ultrasound (Color Doppler)

www.DIS-Tenet.com

| | |
|---|---|
| **Patient Name:** | **JACKSON, ARNOLD** |
| **Ref. Physician:** | **Nutik, Gordon** |
| Account #: | 2064225 |
| Date of Birth: | 10/07/1956 |
| Patient ID: | 397341 |
| Date of Service: | 12/08/2006 |
| Page: | 2 of 2 |

right. There is moderate to severe degenerative foraminal encroachment suggested bilaterally, not as pronounced as involvement at C4-5 and C5-6.

At C7-T1, there are similar disc bulges posteriorly in the right and left lateral recess with no definite cord contact or deformity. There is moderate central canal stenosis and there is bilateral mild to moderate degenerative foraminal encroachment. No other significant findings are detected with some less extensive degenerative changes present at T2-3.

IMPRESSION:
1. SIGNIFICANT CENTRAL CANAL STENOSIS AT MULTIPLE LEVELS, MOST PRONOUNCED AT C5-6 AND THERE IS ALSO MILD CORD CONTACT AND DEFORMITY AT SEVERAL LEVELS AS DETAILED ABOVE.
2. MULTIPLE AREAS OF POTENTIALLY SIGNIFICANT DEGENERATIVE FORAMINAL ENCROACHMENT, ESPECIALLY ON THE RIGHT SIDE AT C5-6 AND C6-7. CLINICAL CORRELATION IS SUGGESTED.
NORMAL ALIGNMENT AND INCIDENTAL VERTEBRAL BODY HEMANGIOMAS AT C4 AND T2.


BRANDT ZIMMER, M.D.
Job #: 1748
Transcription Date: 12/08/2006
Dictation Date: 12/08/2006

This document has been electronically signed by Brandt Zimmer, M.D. on 12/08/2006 at 2:47:50 PM (PST) Verification: 1118161520061208144750


D.I.S. Metairie

| Metairie | Uptown | Marrero | Women's Center | Open MRI |
|---|---|---|---|---|
| 3625 Houma Boulevard | 3437 Prytania St. | 925 Avenue C | 4241 Veterans Blvd., Suite 100 | 4241 Veterans Blvd., Suite 10 |
| Metairie LA 70006 | New Orleans LA 70115 | Marrero LA 70072 | Metairie LA 70006 | Metairie LA 70006 |
| Tel 504.888.7921 | Tel 504.883.5353 | Tel 504.459.3200 | Tel 504.459.3222 | Tel 504.459.3255 |

# DRS. NUTIK & STEINER

### A PROFESSIONAL MEDICAL CORPORATION
### ORTHOPAEDIC SURGERY

GORDON P. NUTIK, M.D.                              ROBERT A. STEINER, M.D.

4224 HOUMA BLVD., SUITE 270                                        Phone: 504-456-8013
METAIRIE, LOUISIANA 70006                                            Fax: 504-456-8183

December 6, 2006

LMS Ship Mgmt.
ATTN: Jenny Domiano
650 Poydras St.
Suite 1700
New Orleans, LA 70130

Re: Arnold Jackson
Chart No. 57424
D/A: 12/6/06

Dear Ms. Domiano:

I examined Arnold Jackson, a 50-year-old man, in my office on 12/6/06. Mr. Jackson states that he was injured on 11/27/06. He was working in Kawait on a ship as a merchant seaman doing AB maintenance. They were bringing supplies and he was moving a mooring line. He felt a pull in his neck. He told the chief mate that he needed to see a doctor. He saw a doctor in Kawait. He underwent x-rays and an EKG because of chest pain. He was not told about the results of the x-rays. He was treated with medications. He was also given injection for Diclofenac, but he did not take it. He was taking the Diclofenac 50 mg. as well as Lyrica 75 mg. The patient stated that they diagnosed brachial plexus per the written report. He came home to New Orleans on 12/4/06 and he is no better. He cannot sleep with his arm like that. His wife has tried massaging the arm.

He has a history of an injury to his left shoulder and neck five or six years ago but he did not have any surgery. He did not remember much about that injury. He states that it took a while to recover. He has not been able to take narcotics as he was addicted to narcotics 20 years ago and would rather not take any narcotic. He states that his neck hurts the same which he localized in the lower neck. He can hear his neck cracking. He can only turn it to the left about 30 degrees. He cannot shave. He complained of pain in the top of the left shoulder and it comes to the back in the scapula. His wife notices it when he sleeps. He is trying to shake his left hand to shake off the fingers. He complained of radiation into the whole left arm, like pins and needles. It hurts inside the left arm. His whole left hand hurts. He denied any history of allergies or ulcers. He

Re: Arnold Jackson
Page 2

states that everything but the left index is burning and sticking sensation. He does have some grip in his left hand. He denied any mid back pain at this time. He has been off of work.

PHYSICAL EXAMINATION:

Physical exam reveals that he is 5' 11" in height and weighs 219 pounds. He walked normally and was able to walk on his heels and toes.

Examination of the neck reveals a decrease in the cervical lordosis. He is not wearing any support about the neck. There is pain to palpation about the left trapezius muscle. There is pain to palpation about the cervical spine from C4 to C7. There is pain to palpation about the left side of the neck over the area of the brachial plexus. There is no pain to palpation about the sternomastoid muscles. There is no spasm of the neck muscles. Neck motion is 45 degrees of forward flexion, 15 degrees of extension, right lateral flexion is 20 degrees and left lateral flexion is 5 degrees. Rotation to the right is 50 degrees and rotation to the left is 20 degrees. Cervical compression test is positive with the neck turned to the left.

Neurologic exam reveals 2+ reflexes about the biceps and brachial radialis and right triceps but the left triceps reflex could not be elicited. There is decreased sensation to light touch generally about the left upper extremity in all the fingers. There is decreased power on muscle testing against resistance about the left upper extremity. He is dominant right-handed and there is 1/2" atrophy of the left forearm. There is pain to palpation anteriorly about the left shoulder. Left shoulder motion is 135 degrees of abduction, 135 degrees of forward flexion, internal rotation 80 degrees, external rotation 5 degrees and extension 30 degrees. He did appear to have adequate abduction power.

Right shoulder exam does not reveal any localized pain to palpation and abduction is 160 degrees, forward flexion 160 degrees, internal rotation 80 degrees, external rotation 5 degrees and extension 30 degrees. There is pain to palpation about the mid back from T1 to T3. There is no pain to palpation about the paravertebral muscles. He exhibits good sensation on either side of the mid back.

X-RAY EXAMINATION:

X-rays of the cervical spine were made at my office by means of AP, lateral, right and left oblique views and an open mouth view of the odontoid. No fractures were seen.

Re: Arnold Jackson
Page 3

Disc heights are narrowed at C4-5 by 15%, C5-6 by 33% and C6-7 by 66%. Osteophytes are present at C5 and C6. There is encroachment of the foramen bilaterally at C4-5, C5-6 and C6-7. Cervical ribs are not present. The odontoid is of normal contour.

X-rays of the left shoulder were made by means of AP and scapular views. No fractures are seen. There is some narrowing of the glenohumeral joint inferiorly. The acromioclavicular joint appears to be maintained.

X-rays of the thoracic spine were made by means of AP and lateral views. No fractures are seen. The discs are patent. There are small osteophytes about the mid thoracic spine and this appears to be largest laterally at the T8-9 level. There is slight scoliosis with list to the left side.

OPINION:

I am presented with a 50-year-old man who gives a history of onset of neck and primarily left upper extremity pain while pulling on a line while working on a ship in Kuwait on 11/27/06. I felt that he may have sustained soft tissue strains about the neck, mid back and left shoulder. I am concerned about the possibility of a herniated cervical disc because of the current neurological findings and referred complaints into the left upper extremity.

At this time I have recommended further study by means of an MRI of the cervical spine. I would consider traction for the cervical spine however I am going to wait for the results of the MRI scan before prescribing any physical therapy. Prescribing medications will be difficult because he does not take narcotics because he is a recovered addict. He was given prescriptions for EC Naprosyn and Flexeril 10 mg. He was told to remain off of work. He was given a return appointment for one week in time.

Yours very truly,

Gordon P. Nutik, M.D.

GPN/ml

cc:   Shannon Marrett

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

94-3916

| | | |
|---|---|---|
| ARNOLD JACKSON | * | CIVIL ACTION |
| VERSUS | * | SECT. R MAG. 5 |
| LIBERTY MARITIME CORPORATION | * | SECT.    MAG. |

### COMPLAINT FOR DAMAGES

The complaint of Arnold Jackson an individual of the full age of majority and a resident of the State of Louisiana, with respect, represents:

1.

Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. Section 1333.

2.

This matter is being brought pursuant to Rule 9(h) of the Federal Rules of Civil Procedure.

3.

At all times hereinafter mentioned, Defendant, Liberty Maritime Corporation, was and now is a foreign corporation not authorized to do but doing business in the State of Louisiana.

4.

On or about July 1, 1994, Plaintiff, Arnold Jackson, was employed by Liberty Maritime Corporation as an AB maintenance man and was working in the course and scope of his employment



EXHIBIT

C

OSG 0063
Jackson

aboard the M/V LIBERTY SEA owned and/or operated by Liberty Maritime Corporation, and as such, is a seaman within the meaning of the Jones Act, 46 U.S.C. Section 688 et seq.

5.

At the said time and in the course and scope of his employment, Arnold Jackson was slushing cable on the light tower in rough seas while the deckhand was holding the ladder; the deckhand let go of the ladder to light a cigarette, and the ladder fell causing Plaintiff to fall and suffer severe permanent injuries to his body and mind including but not limited to his lower back, neck, numbness and tingling in left elbow and little finger and numbness in left leg.

6.

Arnold Jackson alleges that the cause of the aforementioned accident was, inter alia, the negligence of the Defendant and the unseaworthiness of the M/V LIBERTY SEA.

7.

The injuries sustained by Arnold Jackson include severe injuries to his body and mind including but not limited to his lower back, neck, numbness and tingling in left elbow and little finger and numbness in left leg and other serious and permanently disabling injuries to the body and mind that will prevent him from performing the necessary duties of a AB Maintenance man for

the rest of his life and, on information and belief, any occupation requiring hard manual labor.

8.

Because of said injuries and damages, Arnold Jackson may be caused to undergo surgery, has endured severe pain and suffering and mental anguish, and will continue to so suffer and has sustained loss of income.

9.

Plaintiff alleges, on information and belief, that he will in the future, because of said injuries and damages to his body and mind, endure pain and suffering and mental anguish as well as loss of income and other elements of damages both pecuniary and non-pecuniary, all of which entitles Complainant, Arnold Jackson, to damage in the amount of $2,000,000.

WHEREFORE, Arnold Jackson prays that process in due form of law and according to the Federal Rules of Civil Procedure issue against Defendant, Liberty Maritime Corporation, directing them to appear and answer, all and singular, the matters aforesaid; that after due proceedings have been had, there be judgment in favor of Plaintiff, Arnold Jackson, and against the defendant in the full and true sum of $2,000,000, together with legal interest from date of occurrence and for all costs of these proceedings;

Plaintiff further prays for all general and equitable relief which the justice of the cause may require and to which they may otherwise be entitled and that all experts' fees be taxed as costs.

ST. MARTIN & MAHONEY
A PROFESSIONAL LAW CORPORATION


ESTELLE E. MAHONEY    (8879)
LOUIS J. ST. MARTIN    (12364)
STEPHEN J. JOHNSON    (22439)
No. 1 Church Street
Post Office Box 3320
Houma, Louisiana  70361
Telephone:  (504) 868-9600
Counsel for Plaintiff


PLEASE SERVE:

LIBERTY MARITIME CORPORATION
Through the Long Arm Statute:
1979 Marcus Avenue
Suite 200
Lake Success, New York  11042

OSG 0066
*Jackson*

Please File-Stamp and Return

United States Courts
Southern District of Texas
FILED

NOV 0 9 1999

Michael N. Milby, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

ARNOLD JACKSON                    §        CIVIL ACTION

VS.                               §
                                  §        NO. 6-99-688
                                  §
TRANSBULK CARRIERS INC.,          §
OVERSEAS SHIPPING GROUP INC.      §        Pursuant to Rule 9(h)
and OSG SHIP MANAGEMENT INC.      §        Federal Rules of Civil Procedure -
                                  §        ADMIRALTY

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW ARNOLD JACKSON, Plaintiff, complaining of TRANSBULK

CARRIERS INC., OVERSEAS SHIPPING GROUP INC. and OSG SHIP MANAGEMENT

INC., Defendants, and, for cause of action, would respectfully show unto this Honorable

Court the following:

I.

1.    Plaintiff, ARNOLD JACKSON, is a citizen and resident of the State of

Louisiana.

2.    Defendant, TRANSBULK CARRIERS INC., is a foreign corporation doing

business in the State of Texas for the purpose of accumulating monetary profit, but does

not maintain a regular place of business or a designated agent upon whom service of

process may be had for causes of action arising out of such business done in the State of

Texas.  For these reasons, service of process is to be made pursuant to Tex.Civ.Prac. &

Rem. Code § 17.044 by serving the Secretary of State of Texas as agent for TRANSBULK

CARRIERS INC.  This suit arises out of business contacts in this State and, under the

circumstances, TRANSBULK CARRIERS INC. has appointed the Secretary of State of


EXHIBIT
D

Texas as its agent upon whom service of process may be had in this action. The Secretary of State is requested to forward a copy of this Complaint, along with Summons, to this Defendant by forwarding same, by certified mail, return receipt requested, to Defendant, TRANSBULK CARRIERS INC., at its home office, 511 Fifth Avenue, New York, NY 10017.

    3.    Defendant, OVERSEAS SHIPPING GROUP INC., is a foreign corporation doing business in the State of Texas for the purpose of accumulating monetary profit, but does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of such business done in the State of Texas. For these reasons, service of process is to be made pursuant to Tex.Civ.Prac. & Rem. Code § 17.044 by serving the Secretary of State of Texas as agent for OVERSEAS SHIPPING GROUP INC. This suit arises out of business contacts in this State and, under the circumstances, OVERSEAS SHIPPING GROUP INC. has appointed the Secretary of State of Texas as its agent upon whom service of process may be had in this action. The Secretary of State is requested to forward a copy of this Complaint, along with Summons, to this Defendant by forwarding same, by certified mail, return receipt requested, to Defendant, OVERSEAS SHIPPING GROUP INC., at its home office, 511 Fifth Avenue, New York, NY 10017.

    4.    Defendant, OSG SHIP MANAGEMENT INC., is a foreign corporation doing business in the State of Texas for the purpose of accumulating monetary profit, but does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of such business done in the State of Texas. For these reasons, service of process is to be made pursuant to Tex.Civ.Prac. & Rem. Code § 17.044 by serving the Secretary of State of Texas as agent for OSG SHIP

2

## V.

At all material times hereto, Defendants were the owners and/or operators of the vessel on which Plaintiff was injured, a vessel operating on navigable waters of the United States of America.

## VI.

At all material times hereto, Plaintiff was aboard said Defendants' vessel as an able-bodied seaman and employee of Defendants, and was acting within the course and scope of his employment as a seaman and in the service of said vessel.

## VII.

On or about March 21, 1999, as Plaintiff was performing his regular duties while in the service of the vessel, Plaintiff sustained severe and disabling injuries to his neck and back, among other injuries, when he slipped and the wet, slippery deck. Said injuries were caused in whole or in part by the negligence of the Defendants, their agents, servants and/or employees and/or was legally caused by the unseaworthiness of Defendants' vessel.

## VIII.

On or about March 21, 1999, Plaintiff was working as an able-bodied seaman and member of the crew of the vessel OVERSEAS MARILYN, a vessel owned and operated by Defendants. While Plaintiff was performing duties in that vessel's service, Defendants failed in their duty to provide Plaintiff with a safe and seaworthy vessel on which to work.

## IX.

By reason of the occurrence made the basis of this action, including the conduct on the part of the Defendants, Plaintiff sustained severe bodily injuries as described above.

4

As a result of said injuries, Plaintiff has suffered physical pain and mental anguish and, in reasonable medical probability, will continue to do so for the balance of his natural life. As a result of the foregoing injuries, the Plaintiff has suffered a loss of wages in the past, and a loss of capacity to work and earn money in the future and, in reasonable probability, his earning capacity has been impaired permanently. Additionally, Plaintiff has incurred reasonable and necessary medical expenses in the past and, in reasonable probability, will incur reasonable medical expenses in the future. Additionally, as a result of the injuries sustained in said occurrence, Plaintiff has suffered in the past, and will, in reasonable medical probability, continue to suffer permanent physical impairment.

X.

Pleading further, in the alternative, if it be shown that Plaintiff was suffering from some pre-existing injury, disease and/or condition, then such was aggravated and/or exacerbated as a proximate result of the occurrence made the basis of this lawsuit.

XI.

Plaintiff would show that on the above mentioned date, he was injured while in the service of the vessel. As a result, Defendants had, and continue to have, a non-delegable duty to provide the Plaintiff with the benefits of maintenance and cure. Plaintiff would show that he has not reached maximum medical improvement and that said Defendants' duties continue. Said Defendants have denied payment and/or have unreasonably delayed payment for maintenance and cure. As a result of said Defendants' failure to pay and/or delay in paying the benefits of maintenance and cure, Plaintiff has suffered further injuries and damages, for which he now sues. Plaintiff would further show that said Defendants' failure to provide the benefits of maintenance and cure was not only unreasonable, but was arbitrary and capricious, or wilful, callous and persistent, and that, as a result thereof,

5

Plaintiff is entitled to an award of damages for aggravation of his condition caused by Defendants' failure, attorneys' fees and punitive damages for which he now sues, in addition to all other relief sought.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, ARNOLD JACKSON, prays for judgment against Defendants, for all costs of Court, and for all such other and further relief, at law and in equity, to which he may be justly entitled.

Respectfully submitted,

SPAGNOLETTI & ASSOCIATES

Francis I. Spagnoletti
State Bar No. 18869600
Jerry C. von Sternberg
State Bar No. 20618150
1600 Smith, Suite 4545
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:    713-653-5656

6

MANAGEMENT INC. This suit arises out of business contacts in this State and, under the circumstances, OSG SHIP MANAGEMENT INC. has appointed the Secretary of State of Texas as its agent upon whom service of process may be had in this action. The Secretary of State is requested to forward a copy of this Complaint, along with Summons, to this Defendant by forwarding same, by certified mail, return receipt requested, to Defendant, OSG SHIP MANAGEMENT INC., at its home office, 511 Fifth Avenue, New York, NY 10017.

## II.

This is a case of admiralty and maritime jurisdiction, brought pursuant to the Jones Act 46 U.S.C. § 688, and general maritime law, as hereinafter more fully appears. This is an admiralty or maritime claim within the meaning of Rule 9(h), and is brought pursuant to Rule 9(h).

## III.

Venue is proper in this matter pursuant to the terms of 28 U.S.C. § 1391.

## IV.

Plaintiff is an American seaman and brings this action pursuant to 46 U.S.C. § 688 and pursuant to the 28 U.S.C. § 1333 and the general maritime law of the United States. As such, pursuant to 28 U.S.C. § 1916, Plaintiff brings this action without the necessity of pre-payment of costs, fees or the necessity of furnishing security therefor.

```
                              PERSONNEL REPORT

 ─IDENTIFICATION DATA─                 ──ORIGINAL HIRE DATE: 06/24/1997──

 LAST NAME: POLK              FIRST: ALFRED            MIDDLE: LEE
 SS#: 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  P/R#: 0000002112    DISCH. BOOK#: 557376612
  STANDING: Temporary, National, Unlicensed, Deck, Unarchived
   ADDRESS: 6562 COVEVIEW DR                    TEL#: 504-218-5689
            NEW ORLEANS, LA 70126               ALT#:
                                                TMP#:
 MAJORCITY: NEW ORLEANS, -USA
   AIRPORT: NEW ORLEANS           NAT.: N  NAT.DATE:
   CITIZEN: -USA                  ALIEN#:
  BIRTHDAY: 10/23/62         BIRTHPLACE: UNITED STATES

 ─ASSIGNMENT DATA─

         TIME AT SEA: 0 Y, 4 M         TIME WITH COMPANY: 9 Y, 11 M
       LAST SIGNED ON: 01/01/07   MV ATLANTIC FOREST
       LAST SIGNED OFF: 01/08/07  MV ATLANTIC FOREST
 PERMANENT ASSIGNMENT:
       NEXT AVAILABLE:                DO NOT HIRE UNTIL:
 1.   SHIP: MV ATLANTIC FOREST    DUE-ON:            DAYS: 0
   PORT ON: NEW ORLEANS, -USA       OFF:
 2.   SHIP: MV ATLANTIC FOREST    DUE-ON:            DAYS: 0
   PORT ON: NEW ORLEANS, -USA       OFF:
 3.   SHIP: MV ATLANTIC FOREST    DUE-ON: 09/06/06   DAYS: 0
   PORT ON: SUEZ CANAL, EGYPT       OFF:

 RATING: ABLE SEAMAN MAINTANCE         LICENSES: 557376612
 VISAS:                            CERTIFICATES: 557376612

  PASSPORT #: 088989588        DATE ISSUED: 07/11/00  EXPIRED: 07/10/10
 PLACE ISSUED:

 MARITAL STATUS: M   # OF EXEMPTIONS: 2  WEIGHT: 184      HEIGHT: 5-11
 WITHHOLDING TAX: Use Exemptions/Marital  WITHHOLD PCT: 0  ADDITL AMT: 0.00
    COMPLEXION: DARK       EYES COLOR: BRO        HAIR COLOR: BLK
 MEDICAL CARD EXPIRES: 04/05/07

 AGENT/UNION: SIU
      SCHOOL:                     GRADUATED:
```

EXHIBIT

**E**