UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
                                     :

ARNOLD JACKSON,
                        Plaintiff,    :

                                 :

         -against-        :       **07 CV 3320 (SHS)**

                                 :

WATERMAN STEAMSHIP CORP.,
                                 :

                Defendant.    :

                                 :

-------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF LOUISIANA

JUNGE & MELE, LLP
*Attorneys for Defendant*
29 Broadway – 9th Floor
New York, NY 10006
(212) 269-0061

*Of Counsel,*

Peter A. Junge (PJ-0745)
Glenn G. Goodier (La. Bar #6130)
Lance M. Sannino (La. Bar #29409)
JONES, WALKER, WAECHTER,
POITEVENT CARRIÈRE & DENÈGRE, LLP
201 St. Charles Avenue – 48th Floor
New Orleans, LA 70170-5100

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LAW AND ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    WATERMAN STEAMSHIP'S MOTION TO TRANSFER VENUE PURSUANT TO
      28 U.S.C. §1404(A) SHOULD BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Legal Standard Under 28 U.S.C. §1404(A) . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Application of the Relevant Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    Availability and Convenience of the Witnesses and Parties. . . . . . 10

            2.    Location of Relevant Documents. . . . . . . . . . . . . . . . . . . . . . . . . . 13

            3.    Locus of Operative Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            4.    Availability of Process to Compel Attendance of Unwilling
                  Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            5.    The Relevant Means of the Parties. . . . . . . . . . . . . . . . . . . . . . . . 16

            6.    The Forum's Familiarity with the Governing Law. . . . . . . . . . . . . 17

            7.    Weight Accorded Plaintiff's Choice of Forum. . . . . . . . . . . . . . . 17

            8.    Trial Efficiency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Ayers v. Arabian American Oil Company*, 571 F.Supp. 707 . . . . . . . . . . . . . . . . . . . . . 1,18

*Barnett v. Kirby Inland Marine, Inc.*, 202 F.Supp.2d 664 . . . . . . . . . . . . . . . . . . . . . . . . 8

*Blake v. Delta SS Lines*, 1986 AMC 558 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19. . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cutrer v. Lykes Bros. Steamship Co., Inc.*, 1987 U.S. Dist. LEXIS 18 . . . . . . . . . . . . 7,11

*DeMateos v. Texaco, Inc.*, 562 F.2d 895 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Faucette v. Lykes Bros. S.S. Co., Inc.*, 110 F.Supp. 287. . . . . . . . . . . . . . . . . . . . 7,12,13

*Fontana v. E.A.R., a Div. of Cabot Corp., Inc.*, 849 F.Supp. 212 . . . . . . . . . . . . . . . 15,16

*Foster v. United States Lines Co.*, 227 F.Supp. 946. . . . . . . . . . . . . . . . . . . . . . . . . . 7,12

*Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*, 415 F.Supp.2d 370. . . . . . . . . . . . . . . 1,18

*Gomino v. Mississippi Shipping Co.*, 217 F.Supp. 895 . . . . . . . . . . . . . . . . . . . . . . . . 7,12

*Handigran v. Travis & Natalie, Inc.*, 379 F.Supp.2d 83, 84. . . . . . . . . . . . . . . . . . . . . . 7

*Hernandez v. Graebel Van Lines*, 761 F.Supp. 983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hoppe v. G.C. Searle & Company*, 638 F.Supp. 1271 . . . . . . . . . . . . . . . . . . . . . . . 14,15

*Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955 . . . . . . . . . . . . . . . . . . . . . . . 9,17

*Jacobs v. First Shipmore*, 1984 AMC 1566. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,7,11,12

*Jacobsen v. Vivian Tank Ships*, 1983 AMC 2438 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jauch v. Nautical Services, Inc.*, 470 F.3d 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McCorpen v. Central Gulf S.S. Co.*, 396 F.2d 547. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Moore v. Telfon Communications Corp.*, 589 F.2d 959. . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Norwood v. Kirkpatrick*, 349 U.S. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Piper Aircraft Co. v. Raynaud*, 454 U.S. 235. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*Pure Oil Co. v. Suarez*, 384 U.S. 202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Resources Investment Corporation v. Hughes Tool Company*, 561 F.Supp. 1236. . . . . . 9

*Saleeby v. Amoco Shipping Company*, 1977 U.S. Dist. LEXIS 13119. . . . . . . . . . . 7,11,12

*Southeast Equipment Company v. Union Can Corporation*, 498 F.Supp. 164. . . . . . 15,16

*The Orb Factory Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp. 2d 203. . . . . . . . . 8,9,16,17

*Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174. . . . . 8,9,10

*Zepherin v. Greyhound Lines, Inc.*, 415 F.Supp.2d 409. . . . . . . . . . . . . . . . . . . . . . . . 1,18

*ZPC 2000 Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274. . . . . . . . . . . . . . . . . . . . . . . 17,18


**Federal Statutes**

28 U.S.C. §98(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. §1391(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1404(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

iii

Defendant, Waterman Steamship Corporation (hereinafter referred to as "Waterman Steamship"), respectfully submits this Memorandum in Support of its Motion to Transfer the above-entitled action to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1404(a) on the grounds that transfer herein is appropriate for the convenience of all parties and witnesses concerned, and transfer would only serve the ends of justice.

## SUMMARY OF THE ARGUMENT

As shown more fully below, the only connection this action has with the Southern District of New York is that plaintiff's counsel, Larry Arcell, has recently re-located to this area, and upon information and belief, is awaiting admission to practice. This Court has, however, on numerous occasions held that the presence of plaintiff's counsel alone is not controlling, and could not possibly counter the overwhelming bases supporting transfer herein. *See, e.g.*, *Zepherin v. Greyhound Lines, Inc.*, 415 F.Supp.2d 409 (S.D.N.Y. 2006); *Fuji Photo Film Co. Ltd. v. Lexar Media, Inc.*, 415 F.Supp.2d 370 (S.D.N.Y. 2006); *Ayers v. Arabian American Oil Company*, 571 F.Supp. 707, 709, n. 1 (S.D.N.Y. 1983).

Rather, this case bears no relation to the State of New York in any respect. All of the parties concerned and all of the material witnesses identified to date, including plaintiff and his treating physicians, reside in the Eastern District of Louisiana – well beyond this Honorable Court's subpoena power.  Also, all of the pertinent documents, including all medical records and employment records of Mr. Jackson, are located in New Orleans as well.  These undisputed facts, and in

1

particular the fact that plaintiff's current treating physicians and prior treating physicians reside in New Orleans, only serve to reinforce the practicality of the transfer requested herein. *See, e.g.*, *Jacobs v. First Shipmore*, 1984 AMC 1566 (S.D.N.Y. 1983) and *Jacobsen v. Vivian Tank Ships*, 1983 AMC 2438 (S.D.N.Y. 1983).

What's more, plaintiff is in no way prejudiced by the requested transfer since suit was filed three months ago and the parties have undertaken no discovery to date. In short, the convenience of the parties, potential witnesses, as well as the interest of efficient discovery and adjudication of plaintiff's claim, all warrant transfer of venue from this Honorable Court to the United States District Court for the Eastern District of Louisiana.

## SUMMARY OF THE CASE

Plaintiff herein, Mr. Arnold Jackson, a resident of Marrero, Louisiana, in greater New Orleans, and a former employee of Waterman Steamship, claims to have sustained personal injuries on or about November 24, 2006, when he was a member of the crew of the M/V ATLANTIC FOREST, a U.S. flag LASH vessel owned and/or operated by Waterman Steamship. Specifically, Mr. Jackson claims to have sustained injuries to his left shoulder, left arm and/or neck, heaving/moving a mooring line on the deck of the M/V ATLANTIC FOREST, while the vessel was at sea between the Ports of Bahrain and Shuaiba, Kuwait. Although plaintiff claims that he immediately reported his accident, a contemporaneously prepared accident report shows that he did not do so until

November 27, 2006. *See* Declaration of Lisa G. Johnston, submitted in support of this motion, at ¶11, & Exhibit A therein [hereafter "*Johnston Declaration* at __"].

Following his first report of injury, Mr. Jackson was evaluated by Dr. Lubka Simeonovar at the British Medical Center located in Shuaiba, Kuwait. *Johnston Declaration* at ¶12. Dr. Simeonovar diagnosed a left cervical spondylosis and declared Mr. Jackson unfit for duty for three days. Several days later, Mr. Jackson was once again evaluated by Dr. Simeonovar as a result of continued complaints of pain in the left arm and neck. During this second evaluation, Dr. Simeonovar recommended conservative treatment, but the decision was nonetheless made to repatriate Mr. Jackson to the United States, in particular to New Orleans, where Waterman Steamship would and did in fact arrange for his further medical treatment with local healthcare providers, including Dr. Gordon Nutik and Dr. Lucien Miranne. *Johnston Declaration* at ¶¶12-13.

Satisfying its obligations under the general maritime law and contrary to Mr. Jackson's allegations otherwise, Waterman Steamship instituted seaman's benefits following the alleged incident, making both maintenance and cure benefits available to Mr. Jackson in New Orleans. *Johnston Declaration* at ¶¶4, 9. However, shortly after making these benefits available, an independent investigation performed by Waterman Steamship revealed not one, but a series, of prior work-related injuries to the left arm, shoulder, and/or neck sustained by Mr. Jackson but not previously disclosed to Waterman Steamship. *Johnston Declaration* at ¶17.

Specifically, Mr. Jackson was diagnosed with and treated for left arm, elbow, and neck injuries on multiple occasions prior to his employment with Waterman Steamship. *Johnston Declaration* at ¶¶18-19. These work-related injuries were the basis for two previous lawsuits, not unlike the present one, filed by Mr. Jackson. The first of these suits, on December 8, 1994, was an action against Liberty Maritime Corporation in the Eastern District of Louisiana for injuries suffered to Mr. Jackson's lower back, neck, left elbow, and left leg as a result of a fall from a ladder aboard the M/V LIBERTY SEA. *Johnston Declaration* at ¶18. The second, on November 9, 1999, was filed against Transbulk Carriers, Inc., Overseas Shipping Group, Inc., and OSG Ship Management, Inc. in the Southern District of Texas, Galveston Division, for injuries suffered to Mr. Jackson's neck and back as a result of a slip and fall aboard the M/V OVERSEAS MARILYN. *Johnston Declaration* at ¶19. Plaintiff nonetheless denied having ever sustained any such injuries when specifically questioned on the personal medical history section of his pre-employment physical for Waterman Steamship. *Johnston Declaration* at ¶21. Had Waterman Steamship known of plaintiff's prior injuries before his employment, it assuredly would not have hired plaintiff as a seaman aboard one of its vessels for fear of the exact scenario that he now alleges.

As a result of the alleged incident aboard the M/V ATLANTIC FOREST, plaintiff makes claims for injuries to the same region of his neck, arm, and shoulder, which he had previously injured, and for which he had previously

undergone extensive medical treatment in New Orleans. *Johnston Declaration* at ¶20. Accordingly, pursuant to well established precedent set forth by the U.S. Fifth Circuit in *McCorpen v. Central Gulf S.S. Co.*, 396 F.2d 547 (5th Cir. 1968), and later in *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166 (5th Cir. 2005) and *Jauch v. Nautical Services, Inc.*, 470 F.3d 207 (5th Cir. 2006), Waterman Steamship, on February 16, 2007, filed a declaratory judgment action in the Eastern District of Louisiana, seeking a declaration that Waterman Steamship was relieved of any further obligation to pay maintenance and cure to Mr. Jackson as a direct result of his willful and intentional concealment of pre-existing arm, neck and shoulder injuries prior to his employment with Waterman Steamship.

Waterman Steamship filed this action in the Eastern District of Louisiana for no other reason than it sought a speedy and cost effective declaration of the parties' respective rights and liabilities for further maintenance and cure payments, months after benefits were made available. It did not file the declaratory judgment action in lieu of a through investigation as alleged by Mr. Jackson, nor did it race to the courthouse in order to prejudice Mr. Jackson through a premature adjudication of certain issues. Instead, that federal district court is undeniably a court of proper jurisdiction and venue. That is, Mr. Jackson resides and continues to reside in greater New Orleans, and it was at this location that he was personally served with Waterman Steamship's Complaint for Declaratory Judgment. Additionally, at the time of Mr. Jackson's alleged accident, Waterman Steamship's principal place of business was in New Orleans, and all of Mr.

Jackson's treating physicians, for both this and his previous personal injury lawsuits, are located in New Orleans. *Johnston Declaration* at ¶¶5, 15, 20. There is no question that the Eastern District of Louisiana is the court of proper venue for the claims alleged herein. It is by far the most convenient court for all involved, and Waterman Steamship certainly had a valid basis for seeking redress in that, and only that federal district court.

Nonetheless, rather than file responsive pleadings in the Eastern District of Louisiana and avoid any potential prejudice to his Jones Act and general maritime law claims, some two and a half months later, and only in response to that Court's setting of its Call Docket, did Mr. Jackson file his claims in the Southern District of New York, urging as the basis for jurisdiction and venue that Waterman Steamship was and is a New York corporation, doing business within the jurisdiction of this Court. Admittedly, while it is true that Waterman Steamship is an entity incorporated under the laws of New York, its principal place of business at the time of Mr. Jackson's alleged accident was New Orleans, making venue proper there.[1]

---

[1] Venue in a Jones Act case is proper in any district in which the defendant is subject to personal jurisdiction. 28 U.S.C. §1391(c). 28 U.S.C. §1391(c) permits a corporation to be sued in "any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204, 86 S.Ct. 1394, 1395, 16 L.Ed.2d 474 (1966); *see also, DeMateos v. Texaco, Inc.*, 562 F.2d 895 (2nd Cir. 1977); *see also Johnston Declaration* at ¶5.

Even in a seaman's Jones Act case, a plaintiff's choice of venue is subject to impeachment. *See Handigran v. Travis & Natalie, Inc.*, 379 F.Supp.2d 83, 84 (D. Mass. 2005) (noting that "no such rule exists and Jones Act cases are routinely transferred under §1404(a)."). In fact, based upon the considerations of convenience and efficiency, this Court has seen fit on numerous occasions to transfer a seaman's personal injury claims to a more convenient forum on facts nearly identical to those alleged herein. *See, e.g., Cutrer v. Lykes Bros. Steamship Co., Inc.*, 1987 U.S. Dist. LEXIS 18 (S.D.N.Y. 1987); *Blake v. Delta SS Lines*, 1986 AMC 558 (S.D.N.Y. 1985); *Jacobs v. First Shipmore,* 1984 AMC 1566 (S.D.N.Y. 1983); *Saleeby v. Amoco Shipping Company*, 1977 U.S. Dist. LEXIS 13119 (S.D.N.Y. 1977); *Gomino v. Mississippi Shipping Co.*, 217 F.Supp. 895 (S.D.N.Y. 1963); *Foster v. United States Lines Co.*, 227 F.Supp. 946 (S.D.N.Y. 1961); *Faucette v. Lykes Bros. S.S. Co.*, 110 F.Supp. 287 (S.D.N.Y. 1953).

In this case, as in the aforementioned cases, each of the several factors that guide this Court's analysis decidedly favors transferring this action to the Eastern District of Louisiana. To be sure, the balance of relevant factors in this case is so strongly in favor of transfer as to absolutely outweigh any deference paid to plaintiff's choice of forum. For these reasons, the motion to transfer pursuant to 28 U.S.C. 1404(a) by defendant, Waterman Steamship, should be granted.

## LAW AND ARGUMENT

I.    **WATERMAN STEAMSHIP'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a) SHOULD BE GRANTED.**

A.    **Legal Standard Under 28 U.S.C. §1404(a)**

Section 1404(a) provides that:

> For the convenience of the parties and witnesses, and the interest of justice, a district court may transfer any civil action to any district court or division where it might have been brought.

28 U.S.C. §1404(a).[2]  This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts.  *The Orb Factory Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp. 2d 203, 207 (S.D.N.Y. 1998) (*citing Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174, 180 (W.D.N.Y. 1997)).  However, while Section 1404 was drafted in accordance with the doctrine of *forum non conveniens*, the standard for transfer pursuant to Section 1404 is less stringent and the discretion given to the court is broader than a dismissal for *forum non conveniens*.   *Piper Aircraft Co. v.*

---

[2] Under this provision, a Court may grant a motion to transfer when at the time suit was filed "venue could have been properly laid in the proposed transferee court."  *Barnett v. Kirby Inland Marine, Inc.*, 202 F.Supp.2d 664, 667 (S.D. Tex. 2002); *see also The Orb Factory Ltd. v. Design Science Toys, Ltd.*, 6 F.Supp. 2d 203, 208 (S.D.N.Y. 1998) ("The court must first determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court.").  Here, venue for Mr. Jackson's claims is proper in any district in which the defendant is subject to personal jurisdiction.  There is little doubt that this requirement is satisfied herein as Waterman Steamship's principal place of business at the time of Mr. Jackson's alleged incident was New Orleans.  Moreover, as all of the potential witnesses, all of the potential documents, and all potential parties are within the jurisdiction of the Eastern District of Louisiana, as defined by 28 U.S.C. §98(a), this requirement is satisfied.

*Raynaud*, 454 U.S. 235, 254, 102 S.Ct. 252, 260, 7 L.Ed.2d 419, 435 (1981), *rehearing denied*, 455 U.S. 928 (1982).  This is because Section 1404 transfer is a less severe procedural measure than a dismissal under the doctrine of *forum non conveniens.  Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).  Section 1404(a) strives to prevent waste "of time, energy and money" and "to protect the litigants, witnesses and the public against unnecessary inconvenience and expense."  *The Orb Factory Ltd.*, 6 F.Supp.2d at 207 (*citing Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), quoted in *Wilshire*, 976 F.Supp. at 180).

The burden of demonstrating desirability of transfer lies with the moving party, and in considering the motion to transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice."  *Id*. at 208 (*citing Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y. 1995)).  However, although plaintiff's choice of forum is entitled to respect, it is not controlling, especially when the litigation has no substantial connection with the forum.  *Resources Investment Corporation v. Hughes Tool Company*, 561 F.Supp. 1236, 1238 (D.Col. 1983) (citing *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir. 1978)); *Blake v. Delta SS Lines*, 1986 AMC 558, 559 (S.D.N.Y. 1985).

In determining whether transfer is warranted, "for the convenience of the parties and witnesses [and] in an interest of justice" under Section 1404(a), courts

generally consider several factors. The factors to be considered in the instant case include "(1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relevant means of the parties, (7) the forums familiarity with the governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Id*. at 208 (citing *Wilshire Credit Corp.*, 976 F.Supp. at 181).

Application of these factors herein reveals that transfer of this action to the Eastern District of Louisiana is appropriate, if not compelling.

### B.    Application of the Relevant Factors

#### 1.    Availability and Convenience of Witnesses and Parties

The sole parties to this action are Mr. Jackson and Waterman Steamship. Mr. Jackson's domicile while employed by Waterman Steamship was in greater New Orleans and he remains domiciled there where he received his maintenance and cure payments. *Johnston Declaration* at ¶9. Further, at the time of Mr. Jackson's alleged accident, Waterman Steamship's principal place of business was New Orleans. *Johnston Declaration* at ¶5. As such, the parties, including Mr. Jackson who himself is not a resident of New York, will not be inconvenienced in any way by the transfer sought herein.

In fact, it is far more convenient for all parties to have the case transferred to New Orleans because all responsive documents, including all treating physician's records and the majority of corporate documents, such as vessel logs, payroll records and personnel records are in New Orleans. *Johnston Declaration* at ¶¶7, 15, 16. It will simply be more efficient, less time consuming and much less expensive for this case to be tried in New Orleans and for the witnesses to testify in New Orleans. *Johnston Declaration* at ¶8.

Moreover, Mr. Jackson's medical condition was evaluated by physicians in New Orleans following the alleged incident and the majority, if not all, of his medical treatment for this and his previous injuries has been rendered in Louisiana. *Johnston Declaration* at ¶¶14, 15, 20. All of the pertinent witnesses are located in or around New Orleans. Specifically, the purported eye witness to plaintiff's alleged accident, Mr. Alfred Lee Polk, currently resides at 6562 Coveview Drive in New Orleans, Louisiana 70126. *Johnston Declaration* at ¶21, Exhibit E.

This Court has had the occasion to consider motions to transfer similar to this case, and based upon the factors of convenience and efficiency, it has transferred seaman's personal injury claims to a more convenient forum in numerous cases. *See, e.g., Cutrer v. Lykes Bros. Steamship Co., Inc.*, 1987 U.S. Dist. LEXIS 18 (S.D.N.Y. 1987); *Blake v. Delta SS Lines*, 1986 AMC 558 (S.D.N.Y. 1985); *Jacobs v. First Shipmore,* 1984 AMC 1566 (S.D.N.Y. 1983); *Saleeby v. Amoco Shipping Company*, 1977 U.S. Dist. LEXIS 13119 (S.D.N.Y.

1977); *Gomino v. Mississippi Shipping Co.*, 217 F.Supp. 895 (S.D.N.Y. 1963); *Foster v. United States Lines Co.*, 227 F.Supp. 946 (S.D.N.Y. 1961); *Faucette v. Lykes Bros. S.S. Co.*, 110 F.Supp. 287 (S.D.N.Y. 1953).

In *Blake v. Delta SS Lines*, 1986 AMC 558 (S.D.N.Y. 1985), a seaman sustained severe injuries in Ecuador where he was treated for almost one month. He was then taken to Florida where he was treated for a day, then to Baltimore where he remained for one month. Plaintiff was a resident of Baltimore, but filed suit in New York. The court granted defendant's motion to transfer the proceeding to Baltimore, finding that "[w]hile Blake signed onto the S.S. Santa Elena through a union hall in New York, the material events surrounding his claim are completely unrelated to this district." *Id.* at 559. The court also noted that it would be more convenient for the plaintiff who was reportedly confined to bed to travel to Baltimore federal court rather than the New York federal court. *Id.* at 560.

Likewise in *Jacobs v. First Shipmore,* 1984 AMC 1566 (S.D.N.Y. 1983), a seaman was injured aboard the defendant's vessel while in route to Panama. Plaintiff was a resident of Florida and was treated in Panama and Florida. The district court granted the defendant's motion to transfer noting that most of the witnesses resided near or in the Middle District of Florida. *Id.* The plaintiff's treating physician was in Florida as were two eyewitnesses who were no longer employed by the defendant; all of these individuals were within the subpoena power of the Florida court. *Id.*

Finally, in *Faucette v. Lykes Bros. S.S. Co., Inc.*, 110 F.Supp. 287 (S.D.N.Y. 1953), the plaintiff/seaman was taken ill at Singapore, and upon his return to the United States, was hospitalized at the Unites States Marine Hospital in New Orleans, where he was treated by a local physician. *Id.* at 288. Not only was the plaintiff/seaman in *Faucette* a resident of New Orleans, but the defendant/vessel owner maintained its principal place of business at New Orleans. *Id.* Also, as in the present case, the great majority of witnesses to be called by both the plaintiff/seaman and the defendant/vessel owner resided in New Orleans or in some adjacent vicinity, and none of the witnesses to be called resided in or near New York. *Id.* Based on the confluence of these facts, the Court could find "no basis for the commencement of the action in this district," and granted the defendant/vessel owner's motion to transfer. *Id.*

The above-cited cases are near mirror images of the present case both factually and procedurally, and predictably, the ultimate holdings of these cases mandate the transfer of the instant action to the Eastern District of Louisiana.

### 2.    Location of Relevant Documents

All documentation relevant to this matter is located in the vicinity of New Orleans and all potential witnesses for Waterman Steamship at the time of Mr. Jackson's alleged injury worked out of its New Orleans office. *Johnston Declaration* at ¶¶5, 7. These factors absolutely favor the transfer of this cause, inasmuch as Mr. Jackson's medical records, payroll records and employment

records, as well as the pertinent work records of Waterman Steamship, are all located within the vicinity of Eastern District of Louisiana. *Id.*

### 3. Locus of Operative Facts

Here, every act in question, save the actual alleged injury, occurred in Louisiana, including the departure of the vessel, and Mr. Jackson's follow-up medical treatment and receipt of maintenance and cure benefits. *Johnston Declaration* at ¶¶9, 10, 14. Mr. Jackson's medical condition was evaluated by physicians in New Orleans, following the alleged incident and the majority, if not all, of his medical treatment for his claimed injuries and injuries made subject of previous litigation has been rendered in Louisiana. *Johnston Declaration* at ¶¶14, 15, 20. Therefore, this all important factor favors transferring this litigation to the Eastern District of Louisiana.

### 4. Availability of Process to Compel Attendance of Unwilling Witnesses

As stated above, all of the parties concerned and all of the material witnesses identified to date, including plaintiff and his treating physicians, reside in New Orleans, Louisiana – well beyond this Honorable Court's subpoena power. *Johnston Declaration* at ¶¶5, 9, 14, 21. As for the ease of adjudication, compelling the attendance of out-of state witnesses could pose significant problems to just and efficient judicial procedures given the geographic distance between New York and Louisiana.

Focusing on this factor, federal courts throughout the country routinely order transfer to more convenient forums. *See, e.g.*, *Hoppe v. G.C. Searle &*

*Company*, 638 F.Supp. 1271 (D. Minn. 1988); *Southeast Equipment Company v. Union Can Corporation*, 498 F.Supp. 164 (S.D. Ga. 1980); *Fontana v. E.A.R., a Div. of Cabot Corp., Inc.*, 849 F.Supp. 212 (S.D.N.Y. 1994).

For example, in *Hoppe v. G.C. Searle & Company*, 638 F.Supp. 1271 (D. Minn. 1988), a New York resident commenced suit in Minnesota against a Delaware corporation which had its principal place of business in Illinois. The plaintiff alleged that personal injuries were sustained in New York as a result of an intrauterin device manufactured by defendant which had been tested in Minnesota. All treating physicians were in New York, as well as other lay and expert witnesses. Although there was personal jurisdiction over the defendant in Minnesota, the court ordered a transfer to New York under Section 1404(a). The court emphasized that:

> The unavailability of compulsory attendance of these key witnesses is the compelling reason to transfer the case (citation omitted). Forcing the defendant to conduct its case by deposition, even videotaped deposition is simply unjustified.

*Id*. at 1267. The court also noted that plaintiff's choice of forum is not entitled to great weight when all relevant facts point to another forum. *Id*. Finally, the inconvenience of plaintiff's current counsel, with experience in the type of litigation at hand, was "not a factor to be considered in deciding the propriety of the transfer." *Id*.

Similarly, in *Southeast Equipment Company v. Union Can Corporation*, 498 F.Supp. 164 (S.D.Ga. 1980), a Georgia corporation sued a Virginia

corporation in Georgia.  The property damage in question had been sustained in Florida.  All material witnesses for the defendant resided in Florida; however, the material witnesses for the plaintiff resided in the Georgia area.  The court nonetheless granted the transfer, noting that many of the material witnesses were beyond the subpoena power of the court.  The court stated that:

> Underpinning the decisions which were granted transfer on the basis that another forum would better serve the convenience of the witnesses is the principal that trial by live testimony is superior to trial by depositions in resolving factual questions.

*Id.* at 166 (citations omitted); *see also, Fontana v. E.A.R., a Div. of Cabot Corp., Inc.*, 849 F.Supp. 212 (S.D.N.Y. 1994).

In this case, all of the parties concerned and all of the material witnesses identified to date, including plaintiff's own eye witness, Mr. Alfred Lee Polk, are beyond the subpoena powers of this Honorable Court, but not beyond those of the Louisiana court.  *Johnston Declaration* at ¶¶21-22.  Accordingly, this factor weighs heavily in favor of transfer.

### 5.    The Relevant Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *The Orb Factory Ltd.*, 6 F.Supp.2d at 210 (citing *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y. 1991)).  However, where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered.  *Id.* (citations omitted).

Here, plaintiff has made no representations that a transfer of venue would increase any financial hardship that has or might befall him.  In fact, should a transfer to the Eastern District of Louisiana be granted, the relative means of the parties becomes a non-factor as Mr. Jackson will be able to have his case handled closer to home at far less the cost.  Certainly, this factor militates in favor of transfer, rather than maintaining the action in the Southern District of New York.

### 6.    The Forum's Familiarity with the Governing Law

There is no doubt that any federal court, including this one or the Eastern District of Louisiana, is familiar with the laws governing Mr. Jackson's claims.  In fact, both the Southern District of New York and the Eastern District of Louisiana are considered traditionally "maritime" jurisdictions; therefore, either court would be equally competent to effectively resolve this case.  This factor, therefore, does not weigh in favor of either the Southern District of New York or the Eastern District of Louisiana.

### 7.    Weight Accorded Plaintiff's Choice of Forum

As stated previously, the court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *The Orb Factory Ltd.*, 6 F.Supp.2d at 208 (*citing Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F.Supp. 955, 962 (S.D.N.Y. 1995)).  Although a plaintiff's choice of forum is entitled to respect, it is not controlling, especially when the litigation has no substantial connection with the forum and is merely fortuitous.  *See ZPC 2000 Inc. v. SCA*

*Group, Inc.*, 86 F.Supp.2d 274, 280 (S.D.N.Y. 2000); *Blake v. Delta SS Lines*,
1986 AMC 558, 559 (S.D.N.Y. 1985).

This is precisely such an action.  Plaintiff does not reside in the Southern
District of New York.  The accident did not occur in the Southern District of New
York.  *Johnston Declaration* at ¶11.  Plaintiff's medical treatment was not
obtained in the Southern District of New York.  No known fact witnesses reside in
the Southern District of New York.  *Johnston Declaration* at ¶22.  The sole
connection which this matter has with the Southern District of New York is that
plaintiff's attorney, Larry Arcell, has recently re-located here from Louisiana.
However, that factor is of no relevance, inasmuch as this Court has ruled that it
will no longer address the location of counsel in its transfer analysis.  *See
Zepherin v. Greyhound Lines, Inc.*, 415 F.Supp.2d 409 (S.D.N.Y. 2006); *Fuji
Photo Film Co. Ltd. v. Lexar Media, Inc.*, 415 F.Supp.2d 370 (S.D.N.Y. 2006);
*Ayers v. Arabian American Oil Company*, 571 F.Supp. 707, 709, n. 1 (S.D.N.Y.
1983).

In sum, plaintiff's choice of forum should not weigh against the transfer
sought herein.

### 8.    Trial Efficiency

Waterman Steamship was served with Mr. Jackson's Complaint in May
2007.  There is no trial setting.  No discovery has been conducted.  The instant case
thus does not present a scenario wherein there has been an undue delay in seeking
transfer or where the plaintiff will be delayed in the prosecution of his case.  The only

results flowing from a transfer to the Eastern District of Louisiana will be that Mr. Jackson will be able to have his case handled closer to home.

Also, there is substantial duplication of claims in the two pending cases herein, and the Eastern District of Louisiana action, filed first in time, substantially overlaps the issues appearing in the present case. Two trials on identical issues arising from a nucleus of facts bearing no relation to the Southern District of New York would result in a waste of judicial resources, making transfer of this case all the more appropriate. Moreover, because this dispute is between Louisiana residents, courts in that state have a far greater interest in adjudicating the instant dispute than does this Court. This factor, as does the seven others before it, weighs decisively in favor of transfer.

## **CONCLUSION**

For the foregoing reasons, Waterman Steamship respectfully urges the Court, in the sound exercise of its discretion, to order that this action be transferred to the Eastern District of Louisiana – a venue convenient to both parties.

Dated: July 27, 2007

Respectfully submitted,

JUNGE & MELE, LLP
*Attorneys for Defendant*

/s/ Peter A. Junge

By: _____
Peter A. Junge (PJ-0745)
29 Broadway – 9th Floor
New York, NY 10006
(212) 269-0061

*Of Counsel,*

Glenn G. Goodier (La. Bar #6130)
Lance M. Sannino (La. Bar #29409)
JONES, WALKER, WAECHTER,
POITEVENT CARRIÈRE & DENÈGRE, LLP
201 St. Charles Avenue – 48th Floor
New Orleans, LA 70170-5100
(504) 582-8000

TO:    Paul T. Hofmann, Esq.
       HOFMANN & ASSOCIATES
       *Attorneys for Plaintiff*
       360 West 31st Street
       New York, NY 10001
       (212) 465-8840